UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**GREGORY M. SMITH,**

        **Plaintiff,**

-v-

**BT CONFERENCING, INC.,**

        **Defendant.**

Case No. 3:13-cv-160

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING BT'S MOTION TO DISMISS AND TO COMPEL INDIVIDUAL ARBITRATION (Doc. #5); COMPELLING SMITH TO SUBMIT THE CLAIMS THAT HE HAS BROUGHT IN THIS CASE TO INDIVIDUAL ARBITRATION AND TERMINATING THIS CASE**

---

Plaintiff Gregory M. Smith ("Smith") has brought a collective action suit against Defendant BT Conferencing, Inc. ("BT") to recover unpaid overtime wages. Smith makes three (3) Claims for Relief in this suit. (Doc. #1.) Smith's First Claim for Relief is for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., regarding overtime compensation. Smith's Second Claim for Relief is for violation of Ohio's Wage Payment Act, Ohio Rev. Code § 4111.03, and his Third Claim for Relief is for unjust enrichment.  Finally, Smith asks that this be considered a collective action and that he be awarded attorneys' fees.

Now before the Court is BT's Motion To Dismiss and To Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. and Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). (Doc. #5.) This Motion is now fully briefed and ripe for decision. A summary of the relevant facts will first be set forth followed by the relevant legal provisions and an analysis of BT's Motion.

## RELEVANT FACTS

Smith was originally hired by Wire One, BT's predecessor, in September of 2004. (Compl. ¶ 18.) His position at the time was considered temporary.(Id.)

He began working for Wire One in June of 2006 on a permanent basis.[1] (Id. at ¶ 19.) In November of 2007, Smith became an "inside sales manager" for the Midwest region of Wire One where he was considered to be a "salaried" employee. (Id. at ¶ 20.)

As a condition of employment with Wire One, Smith signed an "Invention Assignment, Confidential Information, Non-Competition, Non-Solicitation and Arbitration Agreement" (the "Agreement"). (Affidavit of Beth Baciolek ¶ 3, Ex. 1-B Sept. 6, 2013.) Smith signed the Agreement on June 9, 2005. (Id.)

### The Agreement

The Agreement is effective June 27, 2005. (Id.) It provides that Smith has an "at will" employment relationship with Wire One and that the Agreement survives termination of Smith's employment. (Id.)

Relative to this dispute, the Agreement includes an "Arbitration and Equitable Relief" section (the "Arbitration Clause"). (Id.) The section includes the following language relevant to this dispute:

> I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, or arising out of or relating to my employment, including the termination of my employment, shall be settled by final and binding arbitration before a single neutral arbitrator to be held in jurisdiction of my residence, in accordance with the

---

[1]Smith received and signed a letter of understanding from Wire One detailing an offer of full-time employment as a Returned Materials Authorization Coordinator on June 9, 2005. (Affidavit of Beth Maciolek, Ex. 1-A, Sept. 6, 2013.)

>Rules for the Resolution of Employment Disputes then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy to the extent permitted by law. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each pay one-half of the costs and fees of such arbitration, except that for statutory employment discrimination claims, and to the extent otherwise required by law, any arbitration costs and fees that I would not be required to bear if I were free to bring an action in court, shall be borne by the Company, and in all cases, each of us shall pay our own attorneys' fees and costs.

(Id.)

Acknowledgment of the Agreement is also relevant to this dispute. Paragraph 12(d) of the Agreement provides that,

>By their signatures below, the parties acknowledge that (I) they have had sufficient opportunity to, and have, carefully read each provision of this Agreement, (ii) they have had the opportunity to review the Agreement with legal counsel of their own choice, (iii) they understand each provision, (iv) they are not under any duress, (v) they are not relying upon any representations or promises that are not set forth in this Agreement, and (vi) they are freely and voluntarily signing this Agreement and intend to be bound by it as a solemn contractual undertaking.

(Id.)

Paragraph 12(b) of the Agreement provides that the Agreement is "governed by and interpreted in accordance with the laws of the state of Delaware, without giving effect to any conflict of laws provisions." (Id.) Paragraph 12(e) provides that the Agreement is for the benefit of Wire One and its successors and assigns. (Id.) Finally, the Agreement is signed by Smith and a representative of Wire One on June 9, 2005. (Id.)

On September 30, 2013, Smith signed a Declaration in which he discusses the Agreement. (Memorandum In Opposition To Defendant's Motion To Dismiss and To Compel Individual Arbitration Ex. A.) Therein Smith declares that the Agreement was fully drafted

before he met with Wire One's Human Resources representative. (Id. at ¶¶ 5, 6.) He also declares that none of the terms of the Agreement were explained to him and he was not told that he had an opportunity to have a lawyer of his choosing review the Agreement. (Id. at ¶¶ 7, 8.) In addition, Smith declares that the Agreement was presented to him on a take-it-or-leave-it basis and he had no option to alter the terms. (Id. at ¶¶ 9-11.) Finally, Smith declares that he was not informed that, by executing the Agreement, he may be giving up some rights not expressly waived in the Agreement. (Id. at ¶ 13.)

### Employment With BT

In July of 2008, BT purchased Wire One and Smith became an employee of BT as an "inside sales manager." (Id. at ¶ 21.) As an "inside sales manager" for BT, Smith was responsible for providing support to the outside field representatives. (Id. at ¶ 22.) He did not have any supervisory authority, nor did he have the authority to hire or fire anyone on behalf of BT. (Id. at ¶ 22.)

During all or part of the past three years, Smith has been required to work overtime hours in excess of 40 hours worked per week. (Id. at ¶ 23.) On April 18, 2012, BT informed Smith and others that they were no longer to be considered "salaried" and were, instead, to be considered "hourly" employees (Id. at ¶ 25.) Smith and others were also informed, at the time, that they would begin receiving overtime pay. (Id.) Smith's and the others' work-related duties remained the same. (Id. at ¶ 26.)

### RELEVANT LEGAL PROVISIONS

BT has brought its Motion To Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h) and pursuant to the FAA. Relevant legal provisions regarding each will be set

forth.

### Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) motions to dismiss are based upon an alleged lack of subject matter jurisdiction and generally fall into one of two categories: facial attack or factual attack. *Ohio National Life Insurance Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack questions the sufficiency of the pleading. *Id.* In reviewing a facial attack, a trial court takes the allegations in the complaint as true. In reviewing a factual attack, no presumptive truthfulness applies. *Id.*

A factual attack on subject matter jurisdiction has been commonly termed a "speaking motion." *Id.* (citing C. Wright & A. Miller, *Federal Practice and Procedure* § 1364, at 662-64 (West 1969)). When the facts regarding subject matter jurisdiction create a factual controversy, the court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists. *Id.* In reviewing these "speaking motions," the court may allow affidavits, documents, and a limited evidentiary hearing to resolve the disputed facts. *Id.* Because the issue in a factual attack is the trial court's jurisdiction, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Mortensen v. First Federal Savings and Loan Ass'n.*, 549 F.2d 884, 890 (3d Cir. 1977), *quoted in RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996); *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913 (6th Cir. 1986).

The party asserting jurisdiction has the burden of proving jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442 (1942); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F. 2d 266 (6th Cir. 1990); 5A Wright and Miller, *Federal Practice and Procedure, Civil 2d*, §1350

(1990). The party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence. *Wright v. United States*, 82 F.3d 419, 1996 WL 172119 (6th Cir. 1996).

In this case, BT argues that Smith should be required to individually arbitrate the claims set forth in his complaint and, as a result, this Court does not have subject matter jurisdiction over Smith's Complaint. Thus, BT is making a factual attack on Smith's Complaint.

### Federal Rule of Civil Procedure 12(h)

Rule 12(h) addresses waiving and preserving certain defenses. Fed. R. Civ. P 12(h). Relevant to the issue at hand, Rule 12(h) provides that a court must dismiss an action if it determines that it does not have subject matter jurisdiction.

### The FAA

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). It reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract. *Id.* (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983) and *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010)). The FAA's purpose is to ensure that private arbitration agreements are enforced according to their terms. *Id.* at 1748 (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989). Also, Delaware public policy favors the resolution of disputes through arbitration. *Worldwide Insurance Group v. Klopp*, 603 A.2d 788, 790 (Del. 1992).

Courts must place arbitration agreements on a equal footing with other contracts and enforce them according to their terms, which may include limiting the issues subject to

arbitration. *Id.* at 1745, 1749 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

Where a contract includes an arbitration clause, the court should presume arbitrability, resolve any doubts in favor of arbitrability and not deny an order to arbitrate unless the arbitration clause cannot be interpreted to cover the dispute at hand. *Simon v. Pfizer, Inc.*, 398 F.3d 765, 773 n.12 (6th Cir. 2005). When faced with a broad arbitration clause, only an express provision excluding a specific dispute from arbitration will remove the dispute from arbitration. *Id.* at 775. On the other hand, when an arbitration clause extends only to a specific type of dispute, a court cannot require arbitration of claims that are not included. *Id.* Thus, a court must first determine whether the arbitration agreement is enforceable and then determine whether the Plaintiff's claims against the Defendant fall within the scope of the arbitration agreement. *Brubaker v. Barrett*, 801 F. Supp.2d 743, 750 (E.D. Tenn. 2011); see also *Mitsubishi Motors*, 473 U.S. at 628.

**Enforceability of Arbitration Agreements**

Enforceability of Federal Statutory Rights

Smith's claims involve his federal statutory rights under the FLSA. There are two bases upon which agreements to arbitrate federal statutory rights may be declared unenforceable. *Winn v. Tenet Healthcare Corp.*, No. 1:10-cv-02140-JPM-cgc, 2011 WL 294407 at *6 (W.D. Tenn. Jan. 27, 2011). First, the agreement to arbitrate is invalid if it is invalid under principles of contract law. *Id.* Second, the agreement to arbitrate is invalid if it fails to adequately allow the plaintiff to vindicate his or her statutory rights. *Id.*

Statutory claims may be the subject of an arbitration agreement which is enforceable

pursuant to the FAA. *Landis v. Pinnacle Eye Care, LLC*, 573 F.3d 559, 561-62 (6th Cir. 2008). By agreeing to arbitrate a statutory claim, a plaintiff does not forgo the substantive rights afforded by the applicable statute. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Landis*, 573 F.3d 561-62. The plaintiff only submits to the resolution of his or her claims in an arbitral rather than a judicial forum. *Gilmer*, 500 U.S. at 26. However, the Sixth Circuit has recognized that plaintiff cannot effectively vindicate his or her statutory rights when the arbitration agreement at issue: (1) does not require that the arbitrator be qualified or unbiased; (2) unduly limits discovery; (3) limits remedies available to the plaintiff; or (4) includes cost-sharing provisions that make arbitration prohibitively expensive for the plaintiff. *Winn*, 2011 WL 294407 at *8.

## Cost of Arbitration

Arbitration agreements may also be invalidated when large arbitration costs could preclude a litigant from effectively vindicating his or her federal statutory rights. *Spinetti v Service Corp. International*, 324 F.3d 212, 214 (3d Cir. 2003). A party who wants to invalidate an arbitration agreement because arbitration would be prohibitively expensive has the burden of showing that the arbitration agreement would be prohibitively expensive. *Id.* at 217. Finally, an agreement to arbitrate is not unenforceable simply because it says nothing about arbitration costs. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 80 (2000)

## Burden of Proof

Federal courts apply state law to interpret arbitration agreements so long as the state law is applicable to all contracts. *Dawson v. Rent-A-Center Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012). Finally, the party opposing arbitration has the burden to prove that there is a genuine

issue of material fact regarding the validity of the arbitration agreement. *Brubaker v. Barrett*, 801 F. Supp.2d 743, 750 (E.D. Tenn. 2011).

### Unenforceability

The FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility*, 131 S. Ct. at 1746 (citing 9 U.S.C. § 2). Thus, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," *Id.* (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

### Unconscionability

Under Delaware law, unconscionability involves the question of whether the provision amounts to the taking of an unfair advantage. *Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp.2d 1361, 1366 (S.D. Fla. 2009). However, mere disparity in bargaining power does not support a finding of unconscionability. *Id.* A court must find that the party with the superior bargaining power used the power to take advantage of the weaker counterpart. *Id.* Finally, for a contract clause to be unconscionable, its terms must be so one-sided as to be oppressive. *Id.*

### Assent

Whether Smith assented to the arbitration clause is at issue here. When an individual signs a contract, that individual is presumed to have knowledge of its contents. *Brubaker,* 801 F. Supp. 2d at 751. Further, a party is bound by a contract even if he or she did not read its contents. *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp.2d 641, 648 (N.D. Ohio 2007). Also, when a party performs under a contract, that party is estopped from denying that the parties had a meeting of the minds sufficient to bind them to the contract. *Id.* at 757.

Mutual assent to a contract may be manifested by continued employment of an "at will" employee. *Dantz v. American Apple Group, LLC*, 123 F. App'x 702, 708 (6th Cir. 2005). Finally, "[a] party to a contract cannot silently accept its benefits and then object to its perceived disadvantages…." *Graham v. State Farm Mutual Automobile Insurance Co.*, 565 A.2d 908, 913 (Del. 1989).

**Scope of Arbitration Agreements**

Class arbitration is an issue in this matter. If there is any doubt as to whether a plaintiff's claims fall within the scope of an arbitration agreement, the court should resolve such doubt in favor of arbitration. *Brubaker*, 801 F. Supp.2d at 756 (citing *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc*., 626 F.3d 256, 261 (6th Cir. 2010). However, a party cannot be required to submit a dispute to arbitration which he or she has not agreed to submit to arbitration. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986)

Class Arbitration

"Class arbitration is a matter of consent: An arbitrator may employ class procedures only if the parties have authorized them." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2066 (2013). Thus, where the right to class arbitration is not found in the arbitration agreement, there is no right to class arbitration. *Taylor v. American Income Life Insurance Co.*, No. 1:13 CV 31, 2013 WL 2087359 at *4 (N.D. Ohio May 14, 2013).

In *Stolt-Nielsen*, the Supreme Court held that an arbitration agreement that is silent on the issue of class procedures could not be interpreted to allow class arbitration because the changes caused by the shift from bilateral arbitration to class arbitration are fundamental. *AT&T Mobility*, 131 S. Ct. at 1750. Thus, where an arbitration agreement is silent on whether to permit class

arbitration, it is improper to interpret the arbitration agreement to authorize class arbitration. *Reed Elsevier, Inc. v. Crockett*, No. 3:10cv248, 2012 WL 604305 at *10 (S.D. Ohio Feb. 24, 2012).

The Supreme Court has rejected the argument that a class action waiver in an arbitration agreement is unenforceable merely because the relevant statute allows for class or collective actions. *Gilmer*, 500 U.S. at 32. Yet, other courts have invalidated class action waivers that effectively precluded consumers from asserting small-sum claims. *Caban*, 606 F. Supp.2d at 1370.

## ANALYSIS

The Agreement includes the Arbitration Clause as more fully set forth above. Smith signed the Agreement on June 9, 2005. The Agreement that Smith signed was with Wire One but it inured to the benefit of BT. Therefore, Smith has an agreement to arbitrate with BT.

The FAA applies to arbitration agreements. Therefore, Smith has agreed to arbitrate his claims unless the Arbitration Clause is unenforceable or unless Smith's claims against BT do not fall within the scope of the Arbitration Clause in the Agreement.

Arbitration agreements are enforced according to their terms. Federal courts apply state law to interpret arbitration agreements. The Agreement indicates that it is to be governed by and interpreted in accordance with the laws of the State of Delaware. Therefore, this Court will apply State of Delaware contract law to interpret the Arbitration Clause.

### Enforceability

Smith, who has the burden, offers several arguments as to why the Arbitration Clause is unenforceable. Otherwise, the Arbitration Clause is presumed enforceable as more fully set forth

in FAA-related caselaw.

Smith first argues that the Arbitration Clause is unenforceable because it is unconscionable. It is unconscionable, according to Smith, because it limits the appealability of the arbitrator's decision in a manner that is unfairly beneficial to BT.

The Arbitration Clause limits the appealability of the arbitrator's decision because it indicates that the decision of the arbitrator is final. However, arbitration clauses that limit appealability have only been found to be unconscionable by the Delaware Supreme Court where the limit on appealability was unfairly beneficial to one of the parties. *See Klopp*, 603 A.2d 788, 789 (Del. 1992) (a provision that permits either party to demand trial from an arbitrator's decision only if the arbitrator's award exceeds the financial responsibility limits of the State of Delaware is unenforceable).

In this case, the Arbitration Clause provides that both Smith and BT must accept the arbitrator's decision as final, regardless of the decision. Therefore, the Arbitration Clause is not unconscionable due to limits on appealability because the limit on appealability is not unfairly beneficial to Smith or BT.

Smith next argues that the Arbitration Clause is unconscionable because it applies irrespective of the amount of the potential claim which implicitly allows BT to engage in wrongful conduct that will go unchecked, so long as BT is able to minimize the damages borne by each individual. The first part of Smith's argument that the Arbitration Clause applies irrespective of the amount of Smith's claim is, of course, accurate. is, of course accurate.

Smith's basis for the remainder of this argument is the court's finding in *Caban*. In *Caban*, the court found a class action waiver oppressive because it was a scheme by the

-12-

defendant to defraud thousands of customers, each for extremely small amounts of money, and the thousands of customers would otherwise have no reasonable recourse. *Caban*, 606 F. Supp.2d at 1369. Other courts have upheld class action waivers under other circumstances. *See, i.e. Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 877 (11th Cir. 2005). Others have encouraged courts to take an ad hoc approach to determining the validity of class action waivers. *See, i.e. Dale v. Comcast Corp.*, 498 F.3d 1216 at 1224 (11th Cir. 2007).

In this case, there is no evidence that the Arbitration Clause implicitly allows BT to engage in wrongful conduct by minimizing the damages borne by each individual. There is also no evidence that Smith's claim involves a small amount of money such that he would have no effective recourse through arbitration. In fact, Smith's claim is for at least $300,000 plus liquidated damages and attorneys' fees. Thus, the Arbitration Clause in this case is not unconscionable on this basis.

Smith's next argument is that the Arbitration Clause is procedurally and structurally unfair because it is a contract of adhesion and he was not given the opportunity to negotiate its terms and had no bargaining power. A contract of adhesion is a standard-form contract prepared by one party to be signed by the party in a weaker position who has little choice about the terms. *Black's Law Dictionary* 318-19 (7th ed. 1999).

In this case, Smith acknowledged when he signed the Agreement in 2005 that he had the opportunity to and had carefully read each provision, that he had the opportunity to review the Agreement with his legal counsel, that he understood each provision, and that he was freely and voluntarily signing the Agreement. He then continued to work as an at-will employee for Wire One, and later BT, for at least seven (7) years before declaring in his affidavit that he was not

told that he could have his lawyer review the Agreement, that he was not able to negotiate the terms of the Agreement, that the Agreement was presented to him on a take-it-or-leave-it basis and that he was not informed that he may be giving up some rights not expressly waived in the Agreement. (Declaration of Gregory M. Smith ¶¶ 8-13 Sep. 30, 2003.)

This argument is unavailing for several reasons. First, to be considered unenforceable, the Agreement, including the Arbitration Clause, must be more than an adhesion contract. BT must have used its alleged superior bargaining power to take advantage of Smith. Here, there is no evidence of such.

Second, when Smith signed the Agreement, he is presumed by law to have knowledge of its contents. Also, Smith is bound by the Agreement, even if he did not read its contents.

Third, because Smith continued as an at-will employee, he is precluded from denying that he and Wire One had an enforceable contract. Finally, under Delaware law, Smith cannot, later, through a self-serving declaration, directly contradict the express terms of the Agreement, particularly after working as an at-will employee for more than seven (7) years after signing the Agreement. *See Knight v. Caremark Rx, Inc.*, No. Civ.A. 1750-N, 2007 WL 143099 at *9 (Del. Ch. Jan. 12, 2007). Thus, the Arbitration Clause is not unconscionable on this basis.

Smith's next argument is that, if the Arbitration Clause is construed as a waiver of collective action rights under the FLSA, it is also a waiver of Smith's rights under the National Labor Relations Act ("NLRA"). In support of this argument, Smith cites *D.R. Horton, Inc.*, 2012 NLRB LEXIS 11 (N.L.R.B. Jan. 3, 2012) (an agreement that precludes employees covered by the NLRA from filing joint, class or collective claims addressing wages, hours or other working conditions against the employer unlawfully restricts employees' rights under the NLRA).

This argument is unavailing for several reasons. First, the Arbitration Clause has not been construed as a waiver of collective action rights under the FLSA. The Arbitration Clause does not mention waiver of collective action rights and whether collective action rights are available is addressed later in this Entry and Order. Second, Smith has not shown that he is covered by the NLRA. Thus, the Arbitration Clause is not unconscionable on this basis. Third, the NLRB's decision in *D.R. Horton* has been vacated by the D.C. Circuit because it was decided by an unconstitutionally constituted panel of the NLRB. *Noel Canning v. N.L.R.B.*, 705 F.3d 490, 514 (D.C. Cir. 2013). Fourth, federal courts have rejected *D.R. Horton's* reasoning. *Richards v. Ernst & Young, LLP*, No. 11-17530, 2013 WL 4437601 at *2 (9th Cir. 2013)("the only court of appeals and the overwhelming majority of the district courts, to have considered the issue have determined that they should not defer to the NLRB's decision in *D.R. Horton* because it conflicts with the explicit pronouncements of the Supreme Court concerning the policies undergirding the Federal Arbitration Act…").

Smith's next argument is that the Arbitration Clause is unconscionable because it requires him to pay his own attorneys' fees, and the FLSA requires a court to award attorneys' fees and costs to a successful plaintiff. As is the case several times above, Smith is partially correct. The Arbitration Clause requires him to pay one-half of the costs and fees of arbitration and his own attorneys' fees and costs.

However, the Arbitration Clause also permits the arbitrator to grant relief to the extent permitted by law. Thus, if the FLSA permits an award of attorneys' fees and costs, according to

the Arbitration Clause, an arbitrator may award attorneys' fees and costs.[2] Finally, applying nearly identical provisions, at least one court has held that the parties' arbitration agreement was not rendered unconscionable because the arbitrator was authorized to award attorneys' fees as a remedy under the arbitration agreement. *Winn*, 2011 WL 294407 at *8-9. Thus, the Arbitration Clause is not unconscionable on this basis.

Smith's final argument regarding the Arbitration Clause is that it is unenforceable because it does not effectively permit him to vindicate his rights under the FLSA. This is because, according to Smith, the Arbitration Clause requires him to pay his own attorneys' fees and costs. Attorneys' fees and costs are addressed above with the conclusion that the Arbitration Clause is not unconscionable because it requires Smith to pay attorneys' fees and costs that he may recover if he is the prevailing party. As for vindication of rights, many courts have found that FLSA rights may be effectively vindicated in an arbitral, rather than legal, setting. Thus, the Arbitration Clause is not unenforceable on this basis.

## Scope

Smith's claims are essentially for failure to pay overtime. The Arbitration Clause requires Smith to arbitrate claims arising out of his employment. The alleged failure to pay overtime arises out of Smith's employment. Therefore, the Arbitration Clause applies to Smith's claims. In addition and by way of a parallel analysis, courts have determined that statutory claims, such as Smith's, are arbitrable.

## Class Arbitration

---

[2]BT stipulates that the arbitrator may award attorneys' fees to Smith if he is the prevailing party.

Smith argues that the Arbitration Clause "demonstrates" that he and BT agreed to class arbitration. BT opposes class arbitration. Finally, the Agreement, which includes the Arbitration Clause, makes no mention of class arbitration.

Smith first asserts that the lack of an explicit agreement permitting class arbitration does not alone, prohibit class arbitration. However, the Supreme Court in *Stolt-Nielson S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), has said otherwise.

Smith argues that if *Stolt-Nielsen* held that silence alone prohibited class arbitration, the Supreme Court in *Oxford Health* would have been required to vacate the arbitrator's ruling in that case. However, Smith misreads and misapplies *Oxford Health*. In *Oxford Health*, the Supreme Court strongly implied that the arbitrator may have been incorrect in his analysis, but that the Court could not overturn the arbitrator's decision based upon a very limited scope of review. *Oxford Health*, 133 S. Ct. at 2068.

Smith next argues, regarding class arbitration, that the parties agreed to class arbitration by the terms of the Arbitration Clause. To support this argument, Smith asserts that the term "any dispute… arising out of or relating to my employment" in the Arbitration Clause requires that he be permitted to arbitrate on a class basis.

This argument is unavailing for at least two (2) reasons. First, Smith's interpretation that an arbitration clause that was silent regarding class arbitration means that the parties agreed to arbitration would render Supreme Court's decision in *Stolt-Nielsen* incorrect. Second, the Arbitration Clause refers to disputes arising out of "my" employment, and not to disputes arising out of the employment of others. To permit others' disputes to be arbitrated would require an unacceptable interpretation of the plain language of the Arbitration Clause.

## CONCLUSION

Smith has agreed to arbitrate his claims unless the Arbitration Clause is unenforceable or unless Smith's claims against BT do not fall within the scope of the Arbitration Clause in the Agreement. The Arbitration Clause is enforceable and Smith has agreed to arbitrate his overtime-related claims. Smith, who has the burden, has not shown otherwise. Therefore, Smith has agreed to arbitrate his claims. Further, he must be compelled to do so.

BT's Motion To Dismiss and To Compel Individual Arbitration (doc. #5) is GRANTED. Smith is hereby compelled to submit the claims that he makes in this case to arbitration. Finally, class arbitration is not warranted.

The Sixth Circuit permits district courts to dismiss actions where all of the claims are to be submitted to arbitration and retaining jurisdiction would serve no purpose. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000). However, where one or more claims remain after referring the others to arbitration, the FAA provides for a stay of the remaining claims. *Gilmer*, 500 U.S. at 25.

In this case, all of Smith's claims are to be submitted to arbitration and retaining jurisdiction would serve no purpose. Therefore, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio this Fifth day of November, 2013.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record